UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| EDWIN B. BULL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | Case No. 22-cv-05303-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

**INTRODUCTION**

The plaintiff sued the United States under the Federal Torts Claims Act (FTCA) for medical malpractice and failure to obtain his informed consent for a surgery he had at the San Francisco Veterans Affairs Medical Center (VA) to remove cancerous lesions from his skin. A dermatopathologist evaluated the lesions after the surgery and the plaintiff was told that no residual cancer remained. Because the VA did not have a dermatopathologist on staff at the time of the surgery, it contracted with the University of California at San Francisco (UCSF) to provide those services. The complaint alleges that the findings were inaccurate, the surgery did not remove the melanoma, the plaintiff had a second surgery, and the cancer metastasized.

The United States moved to dismiss the complaint for lack of subject-matter jurisdiction for any claim grounded on USCF's negligence because it has not waived sovereign immunity for negligence claims against its independent contractors. The court grants the motion on that ground.

ORDER – No. 22-cv-05303-LB

**STATEMENT**

On November 12, 2019, a VA surgeon performed a biopsy of a lesion on the plaintiff's upper back and then diagnosed him with melanoma. A VA surgeon removed the lesion on January 31, 2020.[1] The VA did not have a dermatopathologist on staff in 2020, had a contract with USCF for dermatopathology-physician services, and sent slides of the lesion to UCSF for evaluation.[2]

Under the contract, USCF provided "all personnel necessary to perform off-site Dermatopathology Physician Services to eligible beneficiaries of the [VA]" at UCSF's facility at 1701 Divisadero Street in San Francisco.[3] UCSF (the contractor) was responsible for ensuring that its physicians were trained and competent.[4] UCSF and its physicians were not VA employees:

> 2.3. <u>Non Personal Healthcare Services</u>: The parties agree that the Contractor and Contractor physician(s) shall not be considered VA employees for any purpose.
>
> 2.5 <u>No Employee Status</u>: The Contractor shall be responsible for protecting Contractor physician(s) furnishing services. To carry out this responsibility, the Contractor shall provide or certify that the following is provided for all their staff providing services under the resultant contract:
>
> 2.5.1. Workers' compensation
> 2.5.2  Professional liability insurance
> 2.5.3. Health examinations
> 2.5.4. Income tax withholding, and
> 2.5.5. Social security payments.
>
> 2.6. <u>Tort Liability</u>: The Federal Tort Claims Act does not cover Contractor or Contractor physician(s). When a Contractor or Contractor physician(s) has been identified as a provider in a tort claim, the Contractor shall be responsible for notifying their legal counsel and/or insurance carrier. Any settlement or judgment arising from a Contractor's (or contract physician(s)) action or non-action shall be the responsibility of the Contractor and/or insurance carrier.[5]

---

[1] Compl. – ECF No. 1 at 3 (¶¶ 8–10). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. Some citations also include the page numbers at the bottom of documents.

[2] Tabatabai Decl. – ECF No. 20 at 2–3 (¶¶ 3–4, 7).

[3] Contract § B.2, Schedule of Servs., Ex. A to Basile Decl. – ECF No. 21-1 at 4 (p. 3).

[4] *Id.* § 2.1 – ECF No. 21-1 at 9–12 (pp. 8–11) (covering licenses, board certifications, credentials and privileges, technical proficiency, continuing education, training, personnel testing, and other requirements).

[5] *Id.* §§ 2.3, 2.5, 2.6 – ECF No. 21-1 at 13 (p. 12).

Timothy McCalmont, M.D., a professor of clinical pathology and dermatology at UCSF and co-director of UCSF's Dermatopathology Service, reviewed the slides. According to the VA's Chief of Anatomic Pathology, Dr. McCalmont was not an employee of the VA, and the VA did not control his activities. Instead, Dr. McCalmont — in his role as an independent contractor — performed a specialized review of the excised tissue and provided a "consultation review of the pathological findings." The VA relied on Dr. McCalmont's "subspecialized dermatopathology review, findings, and conclusions in issuing its final pathology report in February 2020."[6]

The plaintiff alleges that in April 2021, the VA contacted him, and he had a conference call with the VA Chief of Staff, the Pathology Chief of Staff, the Dermatology Chief of Staff, the Hematology/Oncology Chief of Staff, and a risk manager. He learned that a random review of pathology reports at the VA showed that the "VA pathologists" had misinterpreted the results of his January 2020 surgery. "[C]ontrary to what he had previously been advised, the January 2020 surgery did not successfully remove all cancer, [] the results of pathology from the January 2020 surgery were [p]ositive, and [] residual cancer was left in his body despite what he had been told by VA personnel. At that time, [a] pathology repeat review identified a .7 mm focal residual melanoma as well as a focus of metastatic melanoma in one of the lymph nodes removed during the January 2020 surgery."[7] As a result, the plaintiff had a re-excision biopsy on May 24, 2021, and the VA performed a second excision on June 18, 2021. "That testing not only indicated that [his] cancer had not been successfully treated and removed in January 2020 by [the VA] but that the delay in properly treating his cancer had caused it to grow, spread[,] and metastasize into his body."[8]

In his complaint filed on September 17, 2022, the plaintiff claims that the United States (and its agents, employees, and contractors) were negligent because they failed to properly diagnose

---

[6] Tabatabai Decl. – ECF No. 20 at 2–3 (¶¶ 3–4, 6–8).

[7] Compl. – ECF No. 1 at 4 (¶ 11).

[8] *Id.* (¶ 12).

and treat him, which is medical malpractice and a failure to obtain informed consent.[9] The parties consented to magistrate-judge jurisdiction.[10] The court held a hearing on March 9, 2023.

# LEGAL STANDARDS

## 1. Subject-Matter Jurisdiction — Rule 12(b)(1)

A complaint must contain a short and plain statement of the grounds for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The party asserting jurisdiction has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). If the defendant mounts a factual attack, he may rely on "affidavits or any other evidence properly before the court," in which case it "becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In such cases, "[t]he district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *Id.*

Dismissal of a complaint without leave to amend should be granted only when the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

---

[9] *Id.* at 2–9 (¶¶ 3–23)

[10] Consents – ECF Nos. 9, 16.

**2. Sovereign Immunity — FTCA**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). This is the doctrine of sovereign immunity. The Ninth Circuit has explained: "Before we may exercise jurisdiction over any suit against the government, we must have 'a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver.'" *Id.* (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)). "Limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Mollison v. United States*, 568 F.3d 1073, 1075 (9th Cir. 2009) (citing *Soriano v. United States*, 352 U.S. 270, 276 (1957)) (cleaned up).

Absent a waiver, "a court does not have authority to award relief against the United States or a federal agency." *Isaacs v. United States*, No. 13-CV-01394-WHO, 2013 WL 4067597, at *1 (N.D. Cal. Aug. 1, 2013). "As the party asserting a claim against the United States, [the plaintiff] has the burden of demonstrating an unequivocal waiver of immunity." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009) (cleaned up).

Under the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. This waiver of sovereign immunity is subject to exceptions.

The FTCA covers injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.* § 1346(b)(1). It defines government employees to include officers and employees of "any federal agency" but expressly excludes "any contractor with the United States." *Id.* § 2671; *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

"A critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor." *United States v. Orleans*, 425 U.S. 807, 814 (1976) (cleaned up). "Under the FTCA, the United States is subject to

1  liability for the negligence of an independent contractor only if it can be shown that the government
2  had authority to control the detailed physical performance of the contractor and exercised
3  substantial supervision over its day-to-day activities." *Laurence v. Dep't of Navy*, 59 F.3d 112, 113
4  (9th Cir. 1995) (citing *Orleans*, 425 U.S. at 814–15). This day-to-day control must amount to
5  substantial supervision. *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005). "[C]ircuit courts
6  are unanimous in holding that a contract physician is not an employee of the government under the
7  FTCA." *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993) (collecting cases).

## ANALYSIS

The government contends that the court lacks subject-matter because the United States did not waive sovereign immunity for negligence claims against independent contractors like Dr. McCalmont.[11] The plaintiff counters that (1) the government is equitably estopped from invoking the independent-contractor exception to the FTCA's waiver of sovereign immunity and (2) the independent-contractor exception does not apply because the government did not delegate its entire duty of care to UCSF.[12] The United States has not waived its sovereign immunity for claims against independent-contractor physicians, equitable estoppel does not apply, and the independent-contractor exception still applies with respect to the independent contractor's conduct where the government did not delegate its entire duty.

The court lacks subject-matter jurisdiction under the FTCA for Dr. McCalmont's alleged negligence in interpreting the pathology tissue and wrongly diagnosing the plaintiff as free from cancer. Dr. McCalmont is a UCSF professor, not a VA employee. The VA did not oversee his work or UCSF's laboratory. Instead, Dr. McCalmont conducted his analysis pursuant to a contract between UCSF and the VA that expressly disclaimed any employer-employee relationship. Courts have held that circumstances like these do not involve the "substantial supervision" needed to confer subject-matter jurisdiction under the FTCA.

---

[11] Mot. – ECF No. 19 at 9–11.
[12] Opp'n – ECF No. 24 at 10–17.

For example, in *Carrillo v. United States*, the plaintiff, who was enlisted in the Army, sued the United States for negligence under the FTCA after a contractor physician at an Army medical center failed to identify evidence of child abuse during an examination of her four-month-old son. 5 F.3d 1302, 1303 (9th Cir. 1993). Two days after the examination, the child died because his father struck him in the head. *Id.* The autopsy revealed evidence of previous child abuse: partly healed broken ribs, scarring, and signs of shaken-baby syndrome. *Id.* The district court granted the government's summary-judgment motion because the pediatrician was an independent contractor, and the United States therefore could not be held liable for his negligence under the FTCA. *Id.* at 1304. The Ninth Circuit affirmed. *Id.* at 1305. The medical center regulated the physician's administrative duties and "to some extent the hours he would see patients," but it did not control his practice of medicine. He thus was not a government employee. *Id.* (collecting unanimous authority from other circuits applying the same control test).

*Carillo* compels the conclusion that the United States is not liable for the negligence of its independent-contractor physician. So do other district-court opinions in the Ninth Circuit. *See, e.g.*, *Turner v. United States*, No. 17-cv-02265-WHO, 2018 WL 3368908, at *2, *4 (N.D. Cal. July 10, 2018) (psychiatrist worked for company that contracted with the VA for psychiatric services; the contract stated that he was an independent contractor and the government retained no control over his practice of medicine; he thus was an independent contractor under the FTCA); *Duchac v. United States*, No. 19-cv-2244-LAB, 2021 WL 948796, at *3–4 (S.D. Cal. Mar. 12, 2021) (contract physician at VA facility was an independent contractor, not a government employee); *Kiskila v. United States*, No. 08-cv1032-JM, 2009 WL 3384182, at *1–2 (S.D. Cal. Oct. 19, 2009) (same).

The plaintiff does not dispute that Dr. McCalmont is an independent contractor and instead contends that the United States is estopped from invoking the independent-contractor exception to the FTCA's waiver of sovereign immunity because (1) VA doctors and a VA risk manager told him in April 2021 that the VA had misread the pathology slides in 2020, apologized for their error, told him that he could file an FTCA claim, and sent him the forms for doing so, and (2) the VA did not

disclose Dr. McCalmont's status as an independent contractor until May 2022.[13] Citing *Off. of Pers. Mgmt. v. Richmond*, the government counters that equitable estoppel does not apply to a monetary claim against the federal government that is not authorized by statute.[14] 496 U.S. 414, 434 (1990).

In *Richmond*, the petitioner was a disabled federal employee who received a disability annuity because his impaired eyesight prevented him from performing his job as a welder for the Navy Public Works Center. *Id.* at 416. By statute, the entitlement to a disability annuity ended if an annuitant's income from wages or self-employment exceeded an earnings limit in any calendar year. A repealed version of the statute allowed an annuitant to retain the annuity unless he exceeded the income limit for two consecutive years. *Id.* at 416–17. After receiving incorrect advice from the Navy that the two-year rule applied, the petitioner took overtime work and exceeded the earnings limit. Applying the correct one-year rule, the Office of Personnel Management discontinued his benefits for six months. *Id.* at 418. The Merit Systems Protection Board rejected the plaintiff's argument that OPM was estopped from discontinuing his benefits. The Federal Circuit reversed and required the payment of benefits. It "acknowledged the longstanding rule that ordinarily the government may not be estopped because of erroneous or unauthorized statements of government employees when the asserted estoppel would nullify a requirement prescribed by Congress," but focused on the Court's earlier statement that "we are hesitant to say that there are *no cases* where the Government might be estopped." *Id.* at 418–19 (cleaned up)

The Supreme Court reversed and held that an estoppel claim cannot succeed against the government for a "claim for payment of money from the Public Treasury contrary to a statutory appropriation." *Id.* at 423–24, 434. To hold otherwise would "render the Appropriations Clause a nullity." *Id.* at 428; *see United States v. Hatcher*, 922 F.2d 1402, 1410 (9th Cir. 1991) (in *Richmond*, "the Court decided litigants may not use the doctrine of estoppel *offensively*, to support 'a claim for payment of money from the Public Treasury contrary to a statutory appropriation'") (quoting *Richmond*, 496 U.S. at 424). "[T]he straightforward and explicit command of the

---

[13] *Id.* at 11–15; Bull Decl. – ECF No. 23-1 at 4–5 (¶¶ 9–18), 7 (¶ 26).

[14] Reply – ECF No. 25 at 2–4.

ORDER – No. 22-cv-05303-LB                     8

Appropriations Clause . . . means simply that no money can be paid out of the Treasury unless it has been appropriated by an Act of Congress." *Richmond*, 496 U.S. at 424 (cleaned up). "[J]udicial use of the equitable doctrine of estoppel cannot grant . . . a money remedy that Congress has not authorized." *Id.* at 425.

The Court's decision was consistent with its estoppel precedents, which "evince a most strict approach to estoppel claims involving public funds." *Id.* at 426. The FTCA also "provide[s] a strong indication of Congress'[s] general approach to claims based on governmental misconduct, and suggest[s] that it has considered and rejected the possibility of an additional exercise of its appropriation power to fund claims similar to those advanced here," meaning, claims predicated on misrepresentations. *Id.* at 429–30. "The FTCA provides authorization in certain circumstances . . . for torts committed by Government agents. Yet the FTCA by its terms excludes both negligent and intentional misrepresentation claims from its coverage. See [28 U.S.C.] § 2680(h)." *Id.* at 430 (characterizing the petitioner's claim as "in practical effect one for misrepresentation, despite the application of the 'estoppel' label"). It would be "anomalous for a judicial order to require a Government official . . . to make an extrastatutory payment of federal funds." *Id.* (noting that it would be a crime under 31 U.S.C. §§ 1341 and 1350). The Court concluded:

> Whether there are any extreme circumstances that might support estoppel in a case not involving payment from the Treasury is a matter we need not address. As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds. In this context there can be no estoppel, for courts cannot estop the Constitution.

*Id.* at 434.

Under *Richmond*, there can be no estoppel here. To hold otherwise would require the government to make an extrastatutory payment of funds. *Id.* at 430.

The plaintiff does not cite *Richmond* and — except for *Carrillo* — cites equitable-estoppel cases that do not involve the government's payment of public funds.[15] In *Carrillo*, the plaintiff contended that the hospital never told her that the doctor was an independent contractor. 5 F.3d at 1306. The Ninth Circuit — without addressing *Richmond* — held on the merits that estoppel did not apply

---

[15] Opp'n – ECF No. 24 at 14–15.

because the plaintiff signed a consent form that said that the doctor was a civilian working for a company called Pediatric Providers, as opposed to the Army. *Id.* (distinguishing pre-*Richmond* district-court authority applying estoppel to affirmative misconduct). That straight factual determination does not alter the conclusion that under *Richmond*, estoppel does not apply if it would require the government to make an extrastatutory payment of funds.

    The government argues in the alternative that the plaintiff did not establish the elements of equitable estoppel.[16] Estoppel against the government does not "lie against the Government as it lies against private litigants." *Richmond*, 496 U.S. at 419. "A claim of estoppel against the United States creates a heavy burden upon the party asserting it." *United States v. Omdahl*, 104 F.3d 1143, 1146 (9th Cir. 1997) (cleaned up). Thus, before analyzing the traditional elements of estoppel in cases involving the government, the Ninth Circuit applies a two-prong threshold test: the party invoking estoppel must show (1) "affirmative misconduct [by the government] going beyond mere negligence" and (2) that "the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage." *Hatcher*, 922 F.2d at 1410, 1411 n.12. The plaintiff has not established either.

    First, there is no affirmative misconduct going beyond mere negligence. *Omdahl*, 104 F.3d at 1146 (a computer error and an offer to write down a mortgage based on that error was, at best, mere negligence; "[n]o evidence suggests intentional or reckless misconduct on the part of [the federal agency] or its agents"). At most, this is a failure to inform that does not justify estoppel. *Wagner v. Dir., Fed. Emergency Mgmt. Agency*, 847 F.2d 515, 518–19 (9th Cir. 1988) ("A mere failure to inform or assist does not justify application of equitable estoppel."); *Sturla v. Dir., Fed. Emergency Mgmt. Agency,* No. 96-cv-1258-MHP, 1997 WL 255343, at *4 (N.D. Cal. Apr. 28, 1997) (the plaintiffs did not demonstrate affirmative misconduct because "[a]lthough [the] defendants failed to inform the [plaintiffs] of the need to file a proof of loss, they did not affirmatively misrepresent that the [plaintiffs] did not need to do so"). Also, more practically, the fact allegations show an apology

---

[16] Reply – ECF No. 25 at 5–8.

ORDER – No. 22-cv-05303-LB          10

and a correction of the medical record and do not suggest misconduct: what incentive would the VA have to protect a UCSF physician?

Second, the plaintiff asserts that he learned about UCSF's involvement only in May 2022, he had one year from his April 2021 conversation with the VA to file his lawsuit, and now the claim is barred.[17] He does not explain why that is necessarily so, given the timeline surrounding his discovery. Cal. Civ. Proc. Code § 340.5 (medical-malpractice lawsuits must be filed within one year of the patient's discovering the injury or within three years of the date that the injury occurred, whichever comes first); *see Hills v. Aronsohn*, 152 Cal. App. 3d 753, 760 (1984) ("[F]or the one-year limitations period to be activated not only must the patient be aware of her harm, but also she must be aware of the *negligent cause* of her harm."). Also, he does not allege that the "public's interest will not suffer undue damage" and thus does not establish that element. *FTC v. LendingClub Corp.*, No. 18-cv-02454-JSC, 2020 WL 2838827, at *30 (N.D. Cal. June 1, 2020) ("failure to plead facts in support of the 'public interest' element" renders the defense "insufficient as a matter of law"). Moreover, the government intends to assert that it wasn't negligent because it properly relied on Dr. McCalmont's dermatopathology review and conclusions, and applying equitable estoppel potentially imposes significant liability (given the $20 million demand) on the United States for its own negligence and Dr. McCalmont's conduct, thereby damaging the public fisc.[18] Lower amounts have established undue public burden. *Omdahl*, 104 F.3d at 1146 (the plaintiffs defaulted on a mortgage loan owed to the United States; the district court entered judgment for the United States of $95,350 on the principal and $137,328.97 in interest; the Ninth Circuit affirmed and denied the plaintiffs' claim that the government's offer — based on a computer error — to write down the mortgage to $6,037.51 estopped it from seeking more; in analyzing the public-interest element, the court concluded that the public would be burdened by applying estoppel).

---

[17] Opp'n – ECF No. 24 at 10 (referring mistakenly to April 2019), 12.

[18] Reply – ECF No. 25 at 7.

Finally, relying on *Edison*, the plaintiff contends that the independent-contractor exception does not apply because the government did not delegate its entire duty of care to UCSF. He cites a medical record where a VA pathology resident opined that no residual cancer was detected in the pathology specimens but that the specimens would sent to UCSF for "additional" review.[19] But as the government points out, this is only an argument "that the United States is not immunized for its own allegedly negligent conduct," and the government does not seek dismissal of the case based on its own alleged negligence.[20] In *Edison*, by contrast, the court considered whether a claim could be dismissed entirely where the United States delegated its duty of care to an independent contractor only partly. 822 F.3d at 517–18. Thus, *Edison* does not mean that the United States is vicariously liable for UCSF's conduct. *Duchac*, 2021 WL 948796, at *3 ("*Edison* stands for the proposition that the government may still be liable when it has delegated some, but not all, of its legal duties to a contractor.").

## CONCLUSION

The court grants the motion to dismiss. The case against the VA for its own alleged negligence goes forward.

This disposes of ECF No. 19.

**IT IS SO ORDERED.**

Dated: March 14, 2023

									_____
									LAUREL BEELER
									United States Magistrate Judge

---

[19] Opp'n – ECF No. 24 at 15–17 (citing Progress Note, Ex. B to Valet Decl. – ECF No. 23-2 at 268 (p. 253)).

[20] Reply – ECF No. 25 at 8.